FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Petitioner,

v.

GLEN ELLYN SAVINGS AND LOAN ASSOCIATION, Respondent.

No. 84 C 7685.

United States District Court, N.D. Illinois, E.D.

Nov. 13, 1984.

---

H. Joan Nichols, Gerald F. Chapman, Rosemary Stewart, Washington, D.C., Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for petitioner.

Robert C. Liston, Wheaton, Ill., John Franklin Rosch, Glen Ellyn, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Federal Savings and Loan Insurance Corporation ("FSLIC") has filed its Petition under 12 U.S.C. § 1730(k)(2)[1] for enforcement of a cease and desist order (the "Order") issued August 11, 1976 against Glen Ellyn Savings and Loan Association ("Glen Ellyn"), an institution insured by FSLIC. For the reasons stated in this memorandum opinion and order, FSLIC's petition is granted.

### Background

In 1976 FSLIC charged Glen Ellyn with numerous violations of federal and state regulatory provisions applicable to Illinois-chartered, FSLIC-insured savings and loan associations. Those violations, in FSLIC's view, were "unsafe or unsound practices" warranting the entry of a cease and desist order as provided in Section 1730(e). Glen Ellyn chose not to contest FSLIC's judgment. It consented to entry of the Order, avoiding the institution of cease-and-desist proceedings under the statute.

Periodic examinations of Glen Ellyn since 1976 have revealed continuing violations of various provisions of the Order. FSLIC has not responded by seeking judicial enforcement of the Order. Instead it has engaged in frequent negotiation and discussion with Glen Ellyn to obtain correction of the violations—informal means upon which FSLIC typically relies to seek compliance with a cease-and-desist order. Only in cases where such efforts repeatedly fail does FSLIC resort to judicial enforcement proceedings.[2] This year the examiner's discovery of violations of ten of the Order's 26 provisions prompted FSLIC's resort to this Court for enforcement.[3]

During this Court's October 5, 1984 evidentiary hearing FSLIC presented the testi-

---

1. All citations to the relevant provisions of the statute will take the form "Section 1730—" (as the quotation from the Order later in the text reflects, Section 1730 corresponds to Section 407 of the National Housing Act (the "Act")). Section 1730(k)(2) provides:

   The Corporation [FSLIC] may, in its discretion, apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the principal office of the institution is located, for the enforcement of any effective and outstanding notice or order issued by the Corporation under this section, and such courts shall have jurisdiction and power to order and require compliance therewith....

2. FSLIC has represented as much at Mem. 3, and this Court has no reason to doubt that representation.

3. In each of 1981 and 1982 the examinations disclosed violations of two provisions of the Order. Pl.Ex. 5, 6. In 1983 the examination

mony of Larry E. Ferries ("Ferries"), the Federal Home Loan Bank Board ("Board") examiner who conducted the 1984 examination. Ferries listed and explained the multiple violations of the Order reflected in the examination report. FSLIC also submitted copies of reports covering the preceding three years' examinations.

Glen Ellyn offered no testimony at the hearing. It introduced copies of letters submitted in response to FSLIC's examination reports. Def. Ex. 2–6. While those letters question the existence of some of the violations identified by the examiners, they acknowledge the accuracy of the examination reports as to numerous violations and indicate Glen Ellyn's intent to take appropriate corrective action.

Glen Ellyn's real defense to the Petition is a laches argument (tendered by an "Addendum to Answer and Affirmative Defenses," filed the day of this Court's hearing). It contends FSLIC had not sought enforcement of the Order in the more than eight years since it was agreed to, a period in which there have been changes in (1) the ownership of Glen Ellyn's common stock, (2) the composition of Glen Ellyn's board of directors and (3) Glen Ellyn's management. Glen Ellyn asserts those changes were predicated, at least in part, on the belief FSLIC would seek no further enforcement of the Order. Under those circumstances, Glen Ellyn says, FSLIC should be barred from enforcement by the equitable doctrine of laches.

### FSLIC's Right to Enforcement

■ In both contractual and statutory terms, FSLIC's right to enforcement is

plain. Glen Ellyn's consent to entry of the Order in 1976—and to its enforceability thereafter—was unequivocal (Pl. Ex. 1):

> Glen Ellyn stipulates and agrees that said Order shall be deemed to be a "cease-and-desist order which has become final" as defined in Section 407(q)(1)(A) of the Act (12 U.S.C. § 1730(q)(1)(A)), that it fully complies with all requirements of law, and that the said Order shall become effective upon its issuance and be enforceable by the FSLIC under the provisions of Section 407(k)(2) of the Act (12 U.S.C. § 1730(k)(2)).

Nor does the Order contain any expiration provision. Indeed, Section 1730(e)(2) negates any concept comparable to a "sunset law":

> A cease-and-desist order ... shall remain effective and enforceable except to such extent as it is stayed, modified, terminated, or set aside by action of the Corporation or a reviewing court.

FSLIC itself has declined to take any such action. In March 1980 Glen Ellyn petitioned FSLIC to terminate the Order. In denying that petition, Board supervisory agent David J. Kalina [4] explained (Ans. Ex. B):

> 1. As a matter of policy, cease and desist orders will not be terminated until five years after issuance date.

> 2. The Board would usually require a record of no violations for at least two consecutive examinations immediately preceding the termination.[5]

---

revealed three such violations. Pl.Ex. 3. As the 1984 examination report states (Pl.Ex. 2 at 1):

The association continues to violate the Cease and Desist Order which it has repeatedly done since the Order was issued by the Federal Savings and Loan Insurance Corporation on August 11, 1976 (Resolution No. 76–593). The Order prohibits 26 specific activities which pertain primarily to lending practices and conflict of interest situations.

Our review of activities indicated that item Nos. 1, 6, 7, 8, 9, 13, 14, 15, 16 and 19 of this Order were violated.

4. Board oversees FSLIC. See 12 U.S.C. § 1725(a).

5. Glen Ellyn Ans. 18–19 questions Board's power to adopt informally the five-year rule and the two-year no-violation rule. Such unwritten rules and policies, Glen Ellyn argues, are "at best arbitrary and capricious" (Ans. 19). Quite the contrary is true: There is nothing arbitrary and capricious in establishing such rules of thumb, plainly aimed at making sure the practices giving rise to a cease-and-desist order have been permanently corrected before acceding to the order's termination. Both rules are well-adapted to that end and consistent with Congress' aim in creating Board and FSLIC (discussed in the next paragraph of the text).

Neither of those conditions had been met in 1980, and the second has yet to be. Absent some specific action to terminate by FSLIC, the Order thus remains in effect and subject to enforcement at FSLIC's discretion.

That conclusion is buttressed by the language of Section 1730(k)(2), which says in so many words (and without any qualifying language) FSLIC "in its discretion" may seek enforcement in the courts. That discretionary delegation is reflective of Congress' aim in creating the cease-and-desist powers (S.Rep. No. 1482, 89th Cong. 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3532, 3537–38 (hereafter cited "S.Rep. at—")):

> to provide the federal agencies supervising savings and loan associations with "additional flexible and effective supervisory powers" to supplement existing remedies that had proved "too drastic for use in many cases" as well as "too cumbersome to bring about prompt correction [when] promptness is very often vitally important."

And such vesting of discretion is consistent with the general doctrine that an administrative agency's special knowledge and expertise in the areas of its jurisdiction command judicial respect for the agency's choices as to how it will exercise its remedial powers. *NLRB v. Gissell Packing Co.,* 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969).

### Laches

Faced with such an uncontrovertible showing of FSLIC's power to obtain enforcement, Glen Ellyn is compelled to fall back on a laches defense. Surprisingly the availability of such a defense to bar enforcement of an FSLIC cease-and-desist order appears to be a question of first impression.

Glen Ellyn does not really support its position with reasoning or authority. Instead it simply asserts enforcement of the Order at this late date would be fundamentally unfair (R. Mem. 9–10):

Petitioner may not have it both ways. If the violations are as severe and serious as alleged, Petitioner should have, in the discharge of its duties as establish[ed] by Congress, brought suit long ago to enforce the "cease and desist order." If, on the other hand, as Respondent contends, the violations, if any, are minor, clerical and inevitable, the action of the Petitioner is not only barred by laches but is an abuse of authority.

FSLIC, by contrast, offers three arguments for the proposition that laches is not an available defense:

1. Nothing in the statute under which FSLIC operates contemplates the effective termination of a cease-and-desist order by a district court presiding over an enforcement proceeding.

2. Case law involving other governmental agencies indicates laches is no defense to agency enforcement of an otherwise valid order.

3. Laches is not appropriate in the circumstances of this case.

Those contentions will be addressed in turn.

### 1. *Statutory Provisions*

Section 1730(k)(2), after authorizing FSLIC's resort to a federal district court for enforcement of a final cease-and-desist order, goes on to say:

> [E]xcept as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate or set aside any such order or notice.

Section 1730(j)(2) confers such jurisdiction in the course of judicial review by courts of appeal of cease-and-desist orders issued after a *hearing* before FSLIC:

> Any party to the proceeding, or any person required by an order issued under this section to cease and desist from any of the violations or practices stated therein, may obtain a review of any order served pursuant to paragraph (1) of this

subsection (other than an order issued with the consent of the institution or the director or officer or other person concerned, or an order issued under subsection (h)(1) of this section), by filing in the court of appeals of the United States for the circuit in which the principal office of the institution is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the Corporation be modified, terminated, or set aside.... Upon the filing of such petition, such court shall have jurisdiction, which upon the filing of the record shall, except as provided in the last sentence of said paragraph (1), be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order of the Corporation.

No comparable statutory provision deals in terms with orders entered by *consent.*

Were this Court to pass upon the laches defense, FSLIC argues, it effectively would have reviewed or even "terminated" the Order—something it has no jurisdiction to do under Section 1730(k)(2) and Section 1730(j)(2). There is perhaps some surface plausibility to drawing a negative inference from the absence of a specific statutory provision as to consent orders that would parallel the last-quoted sentence of Section 1730(j)(2) (limited as it is to orders entered after hearing). But on analysis that contention proves too much.

Sections 1730(j)(2) and 1730(k)(2) clearly reflect the congressional intention that an enforcement proceeding should not become the occasion for second guessing FSLIC's judgment in issuing the Order in the first place. But that cannot mean a district court presiding over an enforcement proceeding is nothing more than a rubber stamp—or more accurately, a strong arm.[6] Section 1730(k)(2) provides, after all, that FSLIC may *"apply* to the United States district court ... for enforcement" (emphasis added). To the extent such an application is opposed on an equitable ground that does not go to the propriety or effectiveness of the order itself, but only to the question of its enforceability, the district court in the proper exercise of its jurisdiction under Section 1730(k)(2) must address them.

Glen Ellyn's laches defense calls on this Court to determine whether a fundamental equitable doctrine is applicable to and bars enforcement of an otherwise valid cease-and-desist order. Jurisdiction to entertain FSLIC's enforcement petition must embrace the power to make that decision.[7]

### 2. *Case Law*

FSLIC cites numerous cases as establishing laches "cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest." *United States v. Arrow Transportation Co.,* 658 F.2d 392, 394 (5th Cir.1981). As the Supreme Court explained in *Costello v. United States,* 365 U.S. 265, 281, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961):

> The reason underlying the principle, said Mr. Justice Story, is "to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *United States v. Hoar,* 26 Fed.Cas. 329, 330 (No. 15,373).

---

**6.** One of Glen Ellyn's only persuasive points in its submissions is that a court mandated to give such an unreasoning, Pavlovian response would essentially be engaging in a nonjudicial exercise, posing possible constitutional problems.

**7.** *FSLIC also points to the provision in Section 1730(e)(2) that a cease-and-desist order remains effective and enforceable until set aside by action of FSLIC or a reviewing court. It asserts Glen Ellyn had an obligation to raise its laches defense before the agency and to exhaust its administrative remedies before raising the argu-*

ment before this Court. But even after Glen Ellyn's petition for termination had been denied, FSLIC made no move toward enforcement of the Order. Glen Ellyn's laches defense became relevant only when FSLIC decided to seek enforcement of the Order, thus disturbing Glen Ellyn's expectations of repose. For FSLIC to urge such a defense is barred in the present action because it was not fully pressed in prior administrative proceedings is to put the cart before the horse.

What is at stake here, of course, is not precisely "preserving the public rights, revenues, and property from injury and loss." S.Rep. at 3538 has rather cast the policy FSLIC serves as one "to make sure our banks and savings and loan associations ... continue to serve the Nation effectively and well."

Although direct authority as to FSLIC is lacking, there are analogous precedents that suggest laches may be a potentially available defense here. In *NLRB v. Pool Manufacturing Co.*, 339 U.S. 577, 579–82, 70 S.Ct. 830, 831–33, 94 L.Ed. 1077 (1950), for example, the Supreme Court considered whether NLRB's delay of more than two years in seeking enforcement of a cease-and-desist order gave rise to a laches defense. In the course of its analysis (*id.* at 580–81, 70 S.Ct. at 832, citations omitted) the Court spoke in terms that might well be used to describe FSLIC's supervisory authority over insured savings and loan associations:

> The Board is of course charged with primary responsibility in effectuating the policies of the [National Labor Relations] Act. It has determined that those policies are advanced in some cases by resorting to the processes of negotiation with the employer rather than the compulsion, as well as the trouble and expense, of an enforcement decree.... In some cases delay in enforcement may be helpful in reaching an immediate solution of the problem; in others, exhaustion of negotiation techniques before a decree is requested may consume many months after the Board's order and before such techniques fail. We are of the opinion that a strict judicial time limitation of the duration presented in the instant case would frustrate the deliberate purpose of Congress in permitting, but not requiring, resort to an enforcement decree.... We must not forget that the "question

whether the settlement [with the employer] shall be accepted as definitive is for the Board to decide...." .... The employer, who could have obtained review of the Board order when it was entered ... is hardly in a position to object....

On that reasoning, the Court concluded laches did not under the circumstances bar enforcement of the NLRB order, though it specifically reserved decision on the question (*id.* at 582, 70 S.Ct. at 833):

> whether a period of delay through its length alone may mature into a denial of an enforcement decree or make necessary the adduction of additional evidence.

*Pool*'s failure to reject laches as a matter of law at least implies the availability of such a defense if the facts are right.

*Costello* provides less comfort to Glen Ellyn, for that case rehearsed the proposition that laches is not available against the sovereign. But the Court did not invoke the rule in upholding the government's right to preserve denaturalization proceedings against an individual for an offense that had occurred 27 years earlier (365 U.S. at 282, 81 S.Ct. at 543):

> None of the cases in this Court considered the question of the application of laches in a denaturalization proceeding. However, even if we assume the applicability of laches, we think that the petitioner failed to prove both of the elements which are necessary to a recognition of the defense. Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.

Again the Court held the defense had not been made out in the circumstances of the case.

*Pool* and *Costello*, then, do not necessarily foreclose Glen Ellyn's laches defense.[8] This Court will therefore take a leaf from

---

8. FSLIC does not cite one of the strongest points in its favor: the Supreme Court's pronouncement last term that little if any opening exists for the closely-related doctrine of estoppel against the government. *Heckler v. Community Health Services of Crawford County, Inc.*, ⎯ U.S. ⎯, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42

(Stevens, J., for the Court), 104 S.Ct. 2227–28 (Rehnquist, J., concurring) (1984). Given the remaining analysis in this opinion, that omission by FSLIC is simply another example of the sometimes-rumored sports refereeing principle: "No harm, no foul."

the *Costello* book and assume arguendo the possibility such a defense could lie. Even if so, however, the cases clearly indicate how formidable a hurdle Glen Ellyn must surmount to prevail on such a defense. It must not only show lack of diligence by FSLIC and prejudice to itself; it must also overcome the substantial public policy favoring FSLIC discretion.

### 3. *Propriety of Laches in the Circumstances*

 At last this opinion arrives at the merits (more accurately, the lack of merit) of Glen Ellyn's assertion of laches. It has scarcely proved worth the trip, for Glen Ellyn plainly cannot make out the defense in the circumstances of the present case. Even if it were assumed granting the Petition after eight years would prejudice Glen Ellyn,[9] no basis exists for charging FSLIC with lack of diligence as to the Order. In denying Glen Ellyn's 1980 petition for termination, FSLIC noted recurring violations of the Order. Each of the four examination reports since then has done the same. In each instance FSLIC sought correction of the violations, as Glen Ellyn's letters in response to the examination reports implicitly acknowledge.

Essentially Glen Ellyn argues for a rule that would force the administering agency to hale the offending institution into court for every violation (or at least material violation), rather than pursuing less formal means, on peril of losing the right to enforce a consensual cease-and-desist order. That kind of premium on litigiousness cannot represent sound public policy generally. It does not do so here, in part because it would subvert Congress' announced purposes (quoted earlier in this opinion) to provide the savings and loan regulatory agencies with flexible and effective supervisory powers.

*Conclusion*

In sum (1) FSLIC is entitled to judicial enforcement of the Order and (2) Glen Ellyn cannot make out a defense of laches. Accordingly FSLIC's Petition is granted. Glen Ellyn is ordered to comply with the provisions of the Order.

---

**9.** That assumption is really not warranted. After all, the provisions of the Order simply require Glen Ellyn to comply with existing regulations. See *NLRB v. LaSalle Steel Co.,* 178 F.2d 829, 836 (7th Cir.1949) (National Labor Relations Act case), *cert. denied,* 339 U.S. 963, 70 S.Ct. 996, 94 L.Ed. 1372 (1950). What Glen Ellyn "loses" by enforcement of the Order is the opportunity to get one more free bite at violating the law without being subjected to the potential of contempt sanctions. That is scarcely a "right" that merits interposition of this Court's equitable powers.