C.C. COLLIE, James A. Hess, David Holsey, John F. Rosch, John G. Vondrak, and Glen Ellyn Savings and Loan Association, a State-Chartered Savings and Loan Association, Plaintiffs,

v.

The FEDERAL HOME LOAN BANK BOARD, Defendant.

No. 85 C 6707.

United States District Court, N.D. Illinois, E.D.

Sept. 9, 1986.

Michael A. Braun, Craig P. Ehrlich, Braun & Rivkin, Chicago, Ill., for plaintiffs.

John L. Rogers, III, William J. McKenna, Jr., John F. Zabriskie, Hopkins & Sutter, Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs are stockholders in Glen Ellyn Savings and Loan Association (Glen Ellyn), a thrift institution chartered by the State of Illinois. On September 19, 1985, the Federal Home Loan Bank Board (FHLBB), defendant here, appointed the Federal Savings and Loan Insurance Corporation (FSLIC) receiver of Glen Ellyn pursuant to section 122 of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. § 1729(c)(1)(B). The plaintiffs bring this action—both individually and derivatively on behalf of Glen Ellyn—under 12 U.S.C.

§ 1729(c)(3)(A) to challenge that appointment.[1]

## I. Background

The statute provides that the FHLBB may place a state-chartered institution into receivership when it finds the existence of any of three grounds: insolvency; substantial dissipation of assets or earnings due either to violation of law, rules or regulations, or to unsafe or unsound practices; or an unsafe or unsound condition to transact business. 12 U.S.C. § 1464(d)(6)(A)(i)–(iii), incorporated by reference into 12 U.S.C. § 1729(c)(1)(B). The statute dictates that the Board first seek the approval of the state official with jurisdiction over the institution. That approval was given here. In the instant case, the FHLBB found the existence of all three statutory grounds, as well as repeated and continuing disregard for cease-and-desist orders. See *FSLIC v. Glen Ellyn Savings & Loan Ass'n*, 606 F.Supp. 91 (N.D.Ill.1984).

Plaintiffs, however, contest the determination of insolvency. To take the single most controversial transaction, they contend that the property which secured four Florida land development loans which Glen Ellyn made, appraised for the FHLBB at under $5 million, should in fact be appraised at over $19 million. They argue that both the statute and the standard of review for the FHLBB's action requires a trial, so that a trier of fact can determine which sets of appraisals are correct.

Under 12 U.S.C. § 1729(c)(3)(A), if the FSLIC is appointed receiver for a state-chartered institution, section 101 of the Financial Institutions Supervisory Act of 1966 (FISA), 12 U.S.C. § 1464(d), applies, with the institution having rights identical to those of a federally-chartered associa-

tion under 12 U.S.C. § 1464(d)(6)(A). The relevant sentence of that section reads:

In the event of such appointment, the association may, within thirty days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located ... for an order requiring the Board to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver.

## II. Standard of Review

The Board contends that under this statute our review is limited to whether its act was arbitrary, capricious or an abuse of discretion. It has submitted the administrative record, six massive volumes, and moves for summary judgment. Plaintiffs, however, seize on the phrase "upon the merits." It is not entirely clear from their memoranda whether they construe this phrase as requiring a *de novo* hearing or merely *de novo* review. But they certainly appear to be arguing that the statutory standard of review means that summary judgment is never appropriate when there is a challenge to the appointment of a receiver for a thrift institution.

An arbitrary and capricious standard seems unlikely. It is true, as all authorities agree and plaintiffs concede, that the only question on a challenge to the appointment of a receiver is whether one of the statutory grounds for appointment existed at the time the appointment was made. *Telegraph Savings & Loan Ass'n v. Schilling*, 703 F.2d 1019, 1026 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 681 (1983); *Biscayne Federal Savings & Loan Ass'n v. FHLBB*, 720 F.2d 1499, 1504 (11th Cir.1983), *cert. denied*, 467

---

**1.** As originally filed, the complaint in this action had four counts. Glen Ellyn sued the FHLBB, the FSLIC and the real estate appraisers employed by the FSLIC. The FSLIC, in response, pointed out that the exclusive remedy under 12 U.S.C. §§ 1464(d)(6)(A) and 1729(c)(3)(A) is an action against the Bank Board for the removal of the receiver. Also, as to any claim against the appraisers, only the FSLIC could bring it

since it was Glen Ellyn's successor. Further, the appraisers were probably immune under the Federal Tort Claims Act. An amended complaint substituted the present plaintiffs derivatively for Glen Ellyn. These plaintiffs have voluntarily dismissed the extra counts and all parties except the FHLBB (January 16 and 30, and February 7, 1986).

U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Fidelity Savings & Loan Ass'n v. FHLBB,* 689 F.2d 803, 809 (9th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). The wisdom of the Board's decision to act is not before us. *Biscayne,* 720 F.2d at 1504.

However, an arbitrary or capricious standard would be the same standard used under the Administrative Procedure Act (APA), and it also seems likely that our review is not identical to review under the APA. *Washington Federal Savings & Loan Ass'n v. FHLBB,* 526 F.Supp. 343, 350 (N.D.Ohio 1981). Before the passage of FISA in 1966, appointment of a receiver for a thrift institution was governed by section 503 of the Housing Act of 1954, Pub.L. 83–560, 68 Stat. 634. That statute provided for notice to the association and an opportunity for an administrative hearing before the appointment was made, with the hearing subject to judicial review under the Administrative Procedure Act. *See* S.Rep. No. 1472, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad. News 2723, 2766. However, Congress rewrote the statute in 1966. Although section 101 of FISA tracks the language of the prior statutory provision in several respects, Congress expressly omitted that portion of the prior statute which referred to the administrative hearing and judicial review of it under the APA. That cannot have been an oversight. The legislative history of FISA pointedly refers to APA review for the cease and desist and removal orders, but not for appointment of a receiver. S.Rep. No. 1482, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3532, 3541, 3545–3546. Instead, section 101 of FISA uses the unusual phrase, "upon the merits." FISA § 101 ¶ 6, 12 U.S.C. § 1464(d)(6)(A). Given this context, Congress cannot have intended review "upon the merits" to be the equivalent of review on an arbitrary or capricious standard.

Unfortunately, Congress did not provide any further clues as to what it meant by that phrase. Plaintiffs argue that under the statute a thrift institution is entitled to "at least one opportunity to contest the facts upon which the bank board concluded that the statutory grounds for a receivership existed." (Plaintiffs' response to defendant's motion for summary judgment, p. 4.) They arrive at that proposition in the following manner. Even though Congress deleted the reference to a hearing before appointment of a receiver, they contend, Congress cannot have meant to deprive thrift institutions of the equivalent procedural protections. Rather, according to plaintiffs, the protections were transferred to the court proceeding. As long as any factual dispute exists between the association and the Board, the plaintiffs maintain, then the association must have an opportunity to present its own evidence and oral testimony, and to cross examine the Board's witnesses (plaintiffs' response at 3–4). In support, they cite the district court decision which the Seventh Circuit affirmed in *Telegraph, Telegraph Savings & Loan Ass'n v. FSLIC,* 564 F.Supp. 862, 869 (N.D.Ill.1981), where Judge Grady of this district granted an association challenging the appointment of a receiver a full trial. Plaintiffs conclude that since a dispute exists between their appraisers and the Board's appraisers on the valuation of several pieces of real estate, and the difference is large enough that if their appraisers are correct Glen Ellyn was not insolvent, this case must go to trial.

That construction of the governing statute, however, is at odds with both the plain language of the statute and its legislative history. The statute as written does not mention a hearing. By the ordinary rules of statutory construction that would mean that no hearing is required. We also know that Congress had the prior version of the statute, which included a hearing, before it. The logical inference is that Congress intended to eliminate any entitlement to an adversary hearing as of right.

A further look at the legislative history of FISA explains why. The 1954 Act provided the FHLBB only two remedies which it could use against associations being managed in a careless or unsound manner:

putting the institution in receivership, or withdrawal of federal insurance for depositors. In practice, those remedies proved both too drastic for many of the situations which the Board encountered and too cumbersome to make prompt correction possible. *Larimore v. Comptroller of the Currency,* 789 F.2d 1244, 1250 (7th Cir.1986); S.Rep. No. 1482, *supra,* 1966 U.S.Code Cong. & Ad.News at 3533, 3537. The purpose of FISA was to provide intermediate remedies, such as cease-and-desist orders, and orders to suspend or remove an individual director, officer or other employee. *Id.* With these remedies available, appointment of a receiver now became something of a last resort, to be used for the most part only after the intermediate remedies had failed to correct the problem. *Id.* at 3545. Both cease-and-desist proceedings and removal proceedings include administrative hearings under the APA with the right to judicial review. FISA § 101 ¶¶ 2, 4, 5, 7, 12 U.S.C. § 1464(d)(2), (4), (5), (7); S.Rep. No. 1482, *supra,* 1966 U.S.Code Cong. & Ad. News at 3541–3542, 3546. An administrative hearing at the receivership stage thus became no longer necessary because adequate procedural protections attach to the intermediate remedies. The statute was not intended to give plaintiffs an unqualified right to a hearing.

A reasonable reading of the phrase, "upon the merits," is rather that it means a review in which the FHLBB does not necessarily control the evidence which reaches the reviewing court. "Upon the merits" contrasts with the more usual "on the record." *Telegraph,* 564 F.Supp. at 869. Congress must not have intended for judicial review always to be confined to an administrative record. For one thing, since the statute does not require an adversary hearing, a hearing would not necessarily have been held. Thus an administrative record might not exist, and a court's review could not be confined to that record.

It also seem likely, however, that Congress did not intend to totally shut out an association from an opportunity to present materials to the district court on its own behalf even when a prior administrative

record exists. Rather, the challenging association should have the opportunity to submit evidence whether or not that evidence was considered by the Board, and to develop any facts bearing on the question of whether any of the statutory grounds existed. *See Washington,* 526 F.Supp. at 350 n. 2. "Upon the merits" means that both parties to the reviewing action have the right to develop the judicial record.

Nevertheless, it does not follow from that conclusion that review "upon the merits" is the equivalent of either a *de novo* hearing or *de novo* review of the evidence. Congress charged the FHLBB with the enforcement of these laws and regulations in order to protect depositors and preserve public confidence in thrift institutions. *See, e.g.,* S.Rep. No. 1482, *supra,* 1966 U.S. Code Cong & Ad.News at 3533–3535; S.Rep. No. 1263, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad. News 2530, 2535–2541. The FHLBB's opinion that insolvency, violations or unsound practices existed therefore must carry some weight. Most of the courts which have dealt with the issue agree. *See Biscayne,* 720 F.2d at 1504; *Washington,* 526 F.Supp. at 350; *San Marino Savings & Loan Ass'n v. FHLBB,* 605 F.Supp. 502, 509 (C.D.Cal.1984). If an administrative record exists, the court need not construct it anew, and the Board's findings are entitled to a presumption of correctness if the facts are disputed. *San Marino,* 605 F.Supp. at 509; *Telegraph,* 564 F.Supp. at 870.

The decision to hold a hearing in *Telegraph* is not to the contrary. In *Telegraph,* the Illinois Commissioner of Savings and Loan Associations had taken the initiative on the problems in which that association found itself, and so no prior FHLBB orders had issued. With no orders, there had been no prior opportunity for a hearing. Judge Grady thus sought to ensure that the agency action was supported by facts. 564 F.Supp. at 866–867, 869–871. We do not, however, find any indication that Congress intended to require such a hearing in every case, regard-

less of the circumstances. In the usual situation, by the time an institution faces receivership it has already had several opportunities for hearings, for example on cease-and-desist orders. Congress' omission of the hearing before appointment of a receiver from the current statute must mean that it did not intend for a reviewing court to duplicate that effort. By the same token, a thorough FHLBB investigation before deciding to appoint a receiver, one which gave the association a real chance to submit evidence and argue the facts, would serve the same function. If on the other hand the Board did not investigate or blocked the association's effort to give it evidence, then, as in *Telegraph*, a trial would be appropriate to make sure of the facts.

In light of this legislative history and case law, we think that review "upon the merits" means two things. First, it means that the court should be satisfied that the association has had a meaningful opportunity to make a case in opposition to the appointment of a receiver at some point during the process leading to the appointment. If it has not, then the court should provide that opportunity. If it has, however, the court need not offer another.

Secondly, the Board should be able to show a reasonable factual basis for its action. Since review is limited to whether the Board had the authority to act, the burden would be met by a showing that any one of the statutory grounds for action in fact existed. *Biscayne*, 720 F.2d at 1504; *Telegraph*, 703 F.2d at 1026; *Fidelity*, 689 F.2d at 809. If the evidence at the time of the Board's action was conflicting, the question is whether there were facts from which the FHLBB could have reasonably concluded that one or more of the statutory grounds triggering its authority to act existed. *Biscayne*, 720 F.2d at 1504; *Telegraph*, 703 F.2d at 1028; *San Marino*, 605 F.Supp. at 508; *Washington*, 529 F.Supp. at 393.

### III. Application of the Standard

#### A. Opportunity to Contribute to the Record

Applying these principles to the case at bar, this court is first of all satisfied that Glen Ellyn had ample opportunity to place its case before the Board. Its initial chance came when the FHLBB issued a cease-and-desist order against it in 1976. It then had the opportunity for the hearing provided by statute, but it declined to contest the order. *FSLIC v. Glen Ellyn*, 606 F.Supp. at 92. (It nevertheless proceeded to regularly violate the terms of that order thereafter, *e.g.*, twenty-six times in 1984 alone. *Id.*) The record further shows that before deciding on the appointment of a receiver the FHLBB conducted a thorough investigation in which Glen Ellyn had an opportunity to present its side.

Plaintiffs do not contend that the Board either blocked Glen Ellyn from submitting evidence for the investigation or refused to consider evidence it submitted. Indeed, all indications are that the reverse is true. The Board would have welcomed more materials from Glen Ellyn, but Glen Ellyn took a fiercely uncooperative stance toward the investigation, repeatedly refusing, or dragging its feet on, requests for information. Further, plaintiffs have not suggested that they have anything new to offer this court which was not before the Board. They merely wish to again dispute facts like the value of certain real estate parcels. A trial on that issue would of course tend to degenerate into a swearing contest between appraisers. This court thinks that Glen Ellyn has had a meaningful opportunity to make its case in opposition to the appointment, so that nothing in the statutory standard of review prevents us from moving to consider the Board's motion for summary judgment. *Cf. Unity Savings Ass'n v. FSLIC*, 573 F.Supp. 137, 141 (N.D. Ill.1983).

#### B. Facts Supporting Authority to Act

The question which remains, then, is whether the Board could reasonably have concluded that Glen Ellyn was insolvent;

had seen its assets dissipated either through violations of law, rules or regulations, or through unsound practices; or was in an unsafe or sound condition. We decide that question "on the merits," *i.e.,* on the judicial record submitted by the parties. The FHLBB has submitted the administrative record of its investigation. The plaintiffs have offered no evidentiary materials in response, only memoranda of law. Summary judgment is granted when no genuine issue of material fact exists, so that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The parties dispute the value of certain real estate parcels. We do not, however, have to decide what the land is actually worth, but rather whether the Board made reasonable conclusions from the facts. Summary judgment could issue if, even given that dispute, no rational trier of fact could infer that the FHLBB's belief that at least one statutory ground existed was unreasonable.

The six-volume record amply demonstrates that there can be no genuine issue of fact as to whether the FHLBB reasonably concluded that it could act. One transaction will suffice to illustrate the situation which the Board confronted. In July 1984 Glen Ellyn made four loans, each for $2.4 million, to four individuals, each on security of land holdings in Placida, Florida. The land parcels adjoined each other, and the four were partners in a plan to jointly develop the property for condominiums and a marina. Had the association made one $9.6 million loan to the partnership, it would have violated 12 C.F.R. § 563.9–3, which limits loans to any one borrower to the amount of the association's net worth. The four loans together comprised 400% of Glen Ellyn's net worth at the time. Even with this manipulation, the transaction nevertheless violated four federal regulations and five terms of the cease-and-desist order. The appraisal of the property on which Glen Ellyn relied expressly rested on the assumption that the property would be developed as a unit, not as separate parcels. Further, that appraisal had been made a year earlier for a different institution. The appraisal ascribed a value of $19,500,050 to the property as a whole. The FSLIC arranged for an independent supervisory reappraisal which found a total value for all four parcels of $4,602,000. The Board ordered Glen Ellyn to establish loss reserves to cover the difference between that figure and the $9,600,000 which it had loaned on the property, but Glen Ellyn refused.

The Board, before appointing a receiver, concluded that these and three similar transactions amounted to substantial dissipations of Glen Ellyn's assets. Each also involved violations of laws and regulations. Since Glen Ellyn had refused to establish loss reserves, the FHLBB also adjusted Glen Ellyn's balance sheet to properly account for these transactions. The adjustments changed Glen Ellyn's net worth from its reported positive $4,844,426 to a negative $362,106. The Board therefore concluded that Glen Ellyn was insolvent. It also considered the concentration of loans in a few critical transactions and concluded that Glen Ellyn was in an unsafe and unsound condition to transact business.

Only one of the statutory grounds need exist to give the FHLBB authority to act. Plaintiff's arguments before this court go only to the question of insolvency. Nowhere in their memoranda do plaintiffs dispute the FHLBB's determination that Glen Ellyn experienced a substantial dissipation of assets, accompanied by violations of law and regulations. According to the record, Glen Ellyn loaned a total of $20,360,000 between July 1984 and March 1985 to the Placida project and three other questionable transactions. This court thinks that these loans can fairly be characterized as a substantial dissipation of assets. The FHLBB then describes in its statement of undisputed material facts, filed pursuant to Local Rule 12(e), eleven violations of regulations, ten violations of outstanding cease-and-desist orders and three violations of orders to establish loss reserves in these four transactions alone.

As the Board points out, plaintiffs have failed to file a statement of genuine issues

to be litigated, as required by Local Rule 12(f) when a summary judgment motion is made. The rules indicate that in the absence of such a statement, everything in defendant's Rule 12(e) statement is deemed admitted. Further, a party opposing a summary judgment motion must set forth specific facts which indicate a genuine triable issue. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Though plaintiffs here had the opportunity to submit additional evidence (and knew that they had that opportunity, see plaintiffs' response at 9), none has been forthcoming. Indeed, their memoranda do not even address the issue of the violations. A finding that any of the asserted grounds existed suffices to uphold the appointment. *Biscayne,* 720 F.2d at 1505; *Telegraph,* 703 F.2d at 1026; *Washington,* 526 F.Supp. at 393. The existence of substantial dissipation of assets through violations of rules and regulations is effectively undisputed on this record. Thus, even accepting all of plaintiffs' assertions about the real estate values as true, the Board is nevertheless entitled to summary judgment.

We do not, however, think that the result would be any different if the only ground were insolvency. Plaintiffs argue in essence that the appraisals Glen Ellyn relied on are right and the Board's appraisals are wrong. Plaintiffs also say that the Board ignored additional personal security given for some of the loans. However, as a matter of law the Board defines insolvency and the accounting methods used to determine insolvency. *San Marino,* 605 F.Supp. at 809; *Telegraph,* 564 F.Supp. at 894. It does not necessarily follow, of course, that the Board will always make the right choice between widely conflicting real estate appraisals as a matter of law, but the problem is, like accounting, one the Board has often faced, and its choice is entitled to some weight. Thus the mere existence of a different appraised valuation, without more, is not enough to overcome the presumption of correctness which attaches to the Board's choice.

Further, both sets of appraisals are before this court. On the Placida, Florida project, for example, the appraisal on which Glen Ellyn relied rests on highly optimistic assumptions about the future market for Florida land sales. The appraiser mentions the virtual failure of a similar development literally next door to the land which Glen Ellyn accepted as security, a development in which sales were never strong and had slowed to a trickle by the time of the loans, but discounts that failure in making his assumptions about sales. The FSLIC's appraisal, on the other hand, took current market conditions into account. Whatever the actual value of the land, no trier of fact could infer that it was unreasonable for the Board to rely on the FSLIC's appraisals in preference to Glen Ellyn's when the security of depositors was at stake. The Board's determination that an institution is in an unsafe and unsound condition is also entitled to considerable weight. *San Marino,* 605 F.Supp. at 509.

This court therefore holds that the FHLBB reasonably concluded that Glen Ellyn had experienced substantial dissipation of assets through violation of applicable regulations and a standing FHLBB cease-and-desist order. Indeed, plaintiffs, by failing to submit any evidence to the contrary, have admitted as much. However, we could also hold that as a matter of law the FHLBB reasonably concluded that Glen Ellyn was insolvent.

### Conclusion

Defendant's motion for summary judgment is granted.