**Jarrett E. WOODS, Jr., et al.,**
**Plaintiffs-Appellants,**

v.

**FEDERAL HOME LOAN BANK BOARD, et al., Defendants-Appellees (Two Cases).**

**Nos. 86–1750, 87–1272.**

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1987.

---

1. *St. Francis College v. Majid Ghaidan Al-Khazraji,* — U.S. —, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

Erwin N. Griswold, Jones, Day, Reavis & Pogue, Terence M. Murphy, John B. Rizo, Dallas, Tex., Vaughn, Lynn & Hightower, Michael J. Vaughn, Waco, Tex., for plaintiffs-appellants in No. 86–1750.

Paul W. Grace, Washington, D.C., Butler & Binion, Hayden Burns, Kevin F. Risley, Houston, Tex., Fed. Home Loan Bank Bd., Office of Gen. Counsel, Kathleen Flake, Washington, D.C., for defendants-appellees in No. 86–1750.

Erwin N. Griswold, Waco, Tex., Terence M. Murphy, John B. Rizo, Dallas, Tex., Michael J. Vaughn, Waco, Tex., for plaintiffs-appellants in No. 87–1272.

Paul W. Grace, Asst. Gen. Counsel, Federal Home Loan Bank Bd., Kathleen Flake, Washington, D.C., Peter B. Freeman, Three First Nat. Bank Plaza, John L. Rogers, III, Chicago, Ill., James V. Hammett, Jr., Kevin F. Risley, Houston, Tex., Diane M. Kozub, Asst. U.S. Atty., Dallas, Tex., for defendants-appellees in No. 87–1272.

Before CLARK, Chief Judge, BROWN, and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

This consolidated appeal involves the appointment by the Federal Home Loan Bank Board (Bank Board) of the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for Western Savings Association (Western) on September 12, 1986. The Bank Board determined that Western (1) was insolvent, (2) had suffered substantial dissipation of assets due to violations of regulations and unsafe or unsound practices by its management, and (3) was in an unsafe and unsound condition to transact business. *See* Home Owners' Loan Act, 12 U.S.C. § 1464(d)(6)(A)(i), (ii), and (iii). Plaintiffs filed suit in the district court, seeking removal of the receiver and interim injunctive relief to restrain the receiver from transferring any of Western's assets. The district court immediately denied plaintiffs' request for an injunction. After review of the administrative record and consideration of the parties' arguments, the district court granted the Bank Board's motion for summary judgment, finding no genuine issue of material fact as to whether the decision to appoint the receiver was supported by the administrative record, was not arbitrary or capricious, and was based on three enumerated statutory grounds. Plaintiffs appealed both rulings, and this court consolidated the appeals.

The district court correctly applied the arbitrary or capricious standard in reviewing the Bank Board's decision to appoint a receiver for Western. That court also correctly concluded that no genuine issue of material fact existed as to whether the Bank Board's determination to appoint a receiver was supported by the record. The review procedure provided by Congress in § 1464(d)(6)(A) is constitutional, and plaintiffs were not denied due process. We affirm.

## I. Background

### A. *Facts*

Jarrett E. Woods, Jr. acquired Western on August 30, 1982. At that time, Western was a relatively small savings and loan association with reported assets of about $34 million. After Woods' acquisition, he made a substantial change in the strategy and business operation of the institution. Woods pursued an aggressive growth policy, relying on brokered deposits and so-called "jumbo" deposits of $100,000 or more. Investments shifted from single family, home mortgage loans to acquisition, development and construction loans, commercial real estate loans, and other commercial ventures. By June 30, 1986, Western reported assets of more than $1.9 billion.

Between October 1982 and September 1986 the Bank Board conducted a series of examinations of Western. In February 1984, Bank Board examiners filed a supervisory "adverse rating report" identifying Western's rapid growth and Woods' higher-risk commercial lending practices. The examiners found serious underwriting deficiencies in highly speculative ventures which included loans to borrowers of unsubstantiated creditworthiness and loans in excess of a property's purchase price. The examiners also found improperly documented large-scale loans to officers and shareholders of other Texas savings associations, as well as improperly documented participation by Western in loans granted by these other associations.

This initial examination led to a special examination in March 1984, which focused on Western's portfolio of real estate loans. This examination reviewed a sample of fifteen real estate loans of $1,000,000 or more and found each loan was made by Western without borrower equity. A majority of these loans were "wrapped around" existing loans, and, as a result, Western's liens were subordinate to the liens of other lenders. At least one loan was identified as a "flip"—where property was resold at an inflated price the day it was purchased. This did not appear to the examiners to be an arm's length transaction. Problems with lack of documentation were abundant.

A June 1984 examination of Western's commercial loans and financial accounting practices further revealed improperly substantiated credit information. For example, Western had made loans without obtaining current financial statements of the borrowers and failed to determine the value of the collateral securing the loans. The examiners also found that Western had inflated its reported net worth by more than $18 million through improper accounting.

The results of these examinations were furnished to both Western and the Bank Board. On June 22, 1984, the Bank Board adopted a resolution stating that Western "has engaged in unsafe and unsound practices in violation of the [National Housing Act, 12 U.S.C. § 1730(e)(1)]" and who issued a Temporary Cease and Desist Order along with a notice of Western's right to an administrative hearing to be conducted in accordance with the adjudicative provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 554–57. Western waived its rights to such a hearing and on July 27, 1984 consented to an Order to Cease and Desist. The order required, *inter alia*, that Western obtain proper appraisal reports as a condition for loans secured by real property, comply with regulations governing loans to one borrower, and conform its accounting practices to Bank Board requirements.

Further examinations by the Bank Board disclosed, however, that Western did not alter its practices. They noted Western's lack of compliance with the cease and de-

sist order's requirements as well as additional unsound practices. A January 1985 examination found unacceptable loan concentrations, losses of more than $11 million on problem loans, continuing irregularities in accounting and appraisals, purchases of new participations in the loans of other associations, new violations of the limitation on loans to one borrower, and other questionable or prohibited practices. A February 1986 examination found that Western's loans totalled well over $1 billion. The examiners also found that 1985 losses had reduced Western's reported net worth to only 1.7 percent of total assets, which was below the legal minimum. *See* 12 C.F.R. § 563.13(b). This examination also disclosed new loans without borrower equity, new loans without proper appraisals, and additional violations of the "loans to one borrower" limitations. An interim report in March 1986 questioned the high percentage of loans funded by jumbo and brokered deposits, extensive transactions between Western and a corporation whose board of directors included both Woods and Western's assistant secretary, and four more loans made in violation of the one-borrower limitations.

The examiners' findings and recommendations were the product of a long period of supervision. This process included numerous meetings and informal conversations between the examiners and Western's management and board of directors to discuss the Bank Board's concerns; analysis of Western's loan files and its monthly, quarterly, and annual financial statements; appraisals of the property securing the loans by outside experts; and a report prepared by Western's auditors. At all times it was or should have been apparent to Western that the examiners' efforts were producing a voluminous administrative record of the entire investigation.

Based on this record the Bank Board determined first that, despite a reported net worth of more than $65 million as of June 30, 1986, Western was actually insolvent by at least $56 million based on real estate and other losses of over $120 million not reflected in Western's books. The Bank Board found second that these losses were the result of violations of laws and regulations and unsafe or unsound practices. Based on Western's insolvency, the composition of its loan portfolio, and the apparent refusal of Western's management to utilize sound lending practices—as evidenced by Western's consistent actions and its non-compliance with the cease and desist order—the Bank Board concluded third that Western was in an unsafe and unsound condition to transact business. Pursuant to finding the existence of the above statutory grounds, *see* 12 U.S.C. § 1464(d)(6)(A), the Bank Board appointed the FSLIC as receiver on September 16, 1987. The FSLIC immediately transferred Western's assets to a newly created federal savings and loan institution—Western Federal Savings and Loan Association.

### B. *Proceedings in District Court*

Plaintiffs Woods, Western, Western's parent corporation, and a Western vice-president originally filed this action in June 1986 in an attempt to enjoin the appointment of a receiver.[1] The district court denied the request for an injunction. After the appointment of the receiver, plaintiffs amended their complaint to seek removal of the receiver—an action authorized under § 1464(d)(6)(A)—as well as a temporary restraining order to prohibit the FSLIC from taking possession of Western. After the FSLIC took possession, plaintiffs sought to temporarily restrain the FSLIC from transferring any of Western's assets and liabilities during the pendency of proceedings seeking to remove the receiver. The district court denied this request for interim

---

1. Plaintiffs in district court also challenged the validity of two new Bank Board regulations, 12 C.F.R. §§ 561.6c and 563.17–2, on statutory and constitutional grounds. Plaintiffs claimed that Bank Board relied on the new regulations in determining Western's insolvency. The Bank Board claimed that it did not use the new regulations in appointing the receiver, and the district court declined to address the issue of the regulations' validity. Plaintiffs concede that the issue of the validity of these regulations is not before this court.

relief, reading § 1464(d)(6)(C)[2] to preclude an action by an association to remove or restrain a receiver, other than in the manner provided in part (A).

Defendants moved for summary judgment. The court reviewed the administrative record and considered Western's opposition to the Bank Board's determination. The court concluded that the record supported the Bank Board's finding that three of the statutory grounds for the appointment of a receiver existed. The court reviewed the Bank Board's decision to appoint a receiver under the arbitrary and capricious standard of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), and, based on the record before the Bank Board, found that Western's opposition to the Bank Board's action did not raise a genuine issue of material fact. The court also found it significant that Western did not dispute many of the Bank Board's findings as to numerous unsafe and unsound practices. Accordingly, it dismissed plaintiffs' action seeking to remove the receiver.

Plaintiffs appeal both the denial of injunctive relief and the district court's summary judgment in favor of defendants. Plaintiffs concede that, should this court uphold the district court's summary judgment that the appointment of a receiver was proper, their appeal from the denial of injunctive relief will become moot. Accordingly, we proceed first to address the merits of plaintiffs' action to remove the FSLIC as receiver under § 1464(d)(6)(A).

## II. Discussion

The Bank Board is an independent federal agency established by Congress. 12 U.S.C. § 1437. It is charged with the administration of the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461–1468, and the National Housing Act, 12 U.S.C. §§ 1724–1730. The statutory authority pursuant to which the Bank Board derives its power to appoint a receiver and under which the plaintiffs have sought an order

directing removal of that receiver reads as follows:

The *grounds for the appointment of a* conservator or *receiver* for an association *shall be* one or more of the following: (i) *insolvency in that the assets of the association are less than its obligations to its creditors and others, including its members; (ii) substantial dissipation of assets or earnings due to any violation or violations of law, rules, or regulations, or to any unsafe or unsound practice or practices; (iii) an unsafe or unsound condition to transact business;* (iv) willful violation of a cease-and-desist order which has become final; (v) concealment of books, papers, records, or assets of the association or refusal to submit books, papers, records, or affairs of the association for inspection to any examiner or to any lawful agent of the Board. The Board shall have exclusive power and jurisdiction to appoint a conservator or receiver. *If, in the opinion of the Board, a ground for the appointment of a conservator or receiver as herein provided exists, the Board is authorized to appoint ex parte and without notice a conservator or receiver for the association. In the event of such appointment, the association may, within thirty days thereafter, bring an action in the United States district court* for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia, *for an order requiring the Board to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver.* Upon the commencement of such an action, the court having jurisdiction of any other action or proceeding authorized under this subsection to which the association is a party shall stay such action or proceeding during the

---

**2.** Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the

Board, restrain or affect the exercise of powers or functions of a conservator or receiver. 5 U.S.C. § 1464(d)(6)(C).

pendency of the action for removal of the conservator or receiver.

12 U.S.C. § 1464(d)(6)(A) (emphasis added). *See also* 12 U.S.C. § 1729(c)(1)(B) (extending Bank Board's authority to state-chartered institutions). This court's jurisdiction to review the Bank Board's decision to appoint a receiver "is limited to a determination whether one of the statutory grounds enumerated in § 1464(d)(6)(A) existed at the time of the appointment of the [receiver]." *Alliance Federal Savings and Loan Association v. Federal Home Loan Bank Board (FHLBB)*, 782 F.2d 490, 493, *modified on other grounds*, 790 F.2d 34 (5th Cir.1986) (agreeing with *Biscayne Federal Savings & Loan Association v. FHLBB*, 720 F.2d 1499, 1503–04 (11th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984)).

A. *Standard of Review*

■ We noted in *Alliance* that § 1464(d)(6)(A) does not expressly define the scope of a district court's judicial review in determining "upon the merits" whether to "dismiss such action or direct the Board to remove such conservator or receiver for the association." The district court in this case based its consideration of whether the Bank Board properly appointed a receiver upon the administrative record reviewed under the "arbitrary and capricious" standard of the APA.[3] Plaintiffs respond that they are entitled to *de novo* judicial review in the district court, as required by the statute itself, the APA, and the Constitution.

This court in *Alliance* did not directly address the issue of whether an aggrieved association is entitled to have its removal action reviewed *de novo* under § 1464(d)(6)(A).[4] Plaintiffs contend that the wording of the statute—"the court shall upon the merits dismiss such action or direct the Board to remove such conservator or receiver"—mandates *de novo* review. The Supreme Court has advised, however, that "in cases where Congress has simply provided for review, without setting forth the standards to be used or procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held." *United States v. Carlo Bianchi and Co.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963) (citing *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930); *National Broadcasting Co. v. United States*, 319 U.S. 190, 227, 63 S.Ct. 997, 1014, 87 L.Ed. 1344 (1943)). We agree with the Eighth Circuit that § 1464(d)(6)(A) is such a statute which does not provide for *de novo* review. *See Guaranty Savings & Loan Association v. FHLBB*, 794 F.2d 1339, 1342 (8th Cir.1986). The Eighth Circuit observed that the statute's provision that "the court shall *upon the merits* dismiss such action" did not define the scope of review but rather directed the district court to affirm or reverse the appointment of a receiver based on the existence of statutory grounds for appointment—not on procedural or policy grounds.

Moreover, we are persuaded that our interpretation of § 1464(d)(6)(A) is consistent with congressional intent to "vest[ ] a vast amount of control and authority in the [Bank Board] to regulate savings and loan associations." *Alliance*, 782 F.2d at 493

---

**3.** The relevant portion of the APA provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

   *    *    *    *    *    *

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

5 U.S.C. § 706(2)(A).

**4.** This court noted in the initial *Alliance* opinion that the association did not request a trial *de novo*. 782 F.2d at 496. On rehearing upon petition of the Bank Board, the court redrafted the paragraph containing this statement and deleted any reference to the availability of a *de novo* proceeding to challenge the appointment of a receiver, 790 F.2d at 34–35, and thus implicitly left open the issue of scope of review.

(citing *Fidelity Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 159–67, 102 S.Ct. 3014, 3025–30, 73 L.Ed.2d 664 (1982)). Section 1464(d)(6)(A) itself manifests a strong congressional intent for swift, effective regulatory action. The Bank Board is expressly granted the "exclusive power and jurisdiction" to appoint a receiver "ex parte and without notice," if the Bank Board finds that any of the enumerated grounds for appointment exists. This authority extends to FSLIC—insured state chartered institutions. *See* 12 U.S.C. § 1729(c)(1)(B).

Congress has granted the FSLIC extensive powers to regulate and supervise insured savings and loan institutions. *See* 12 U.S.C. §§ 1726–1730. Pursuant to its congressional mandate, the Bank Board has promulgated a comprehensive regulatory scheme to protect the FSLIC's financial interests. *See* 12 C.F.R. Parts 500–591. The reasons for such extensive regulation and the broad congressional mandate are obvious: insured institutions derive their principal financial integrity from the federal insurance scheme; a major portion of the risk of financial failure falls squarely upon the FSLIC as insurer of every depositor's account. We previously observed that "Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to accomplish these goals not be interferred with by other judicial or regulatory authorities." *North Mississippi Savings & Loan Association v. Hudspeth*, 756 F.2d 1096, 1101 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986) (third-party contract dispute with FSLIC as receiver for failed association).

Plaintiffs cite several district court cases which they construe as interpreting § 1464(d)(6)(A) "to require a full adversarial and evidentiary hearing." *See, e.g., Haralson v. FHLBB*, 655 F.Supp. 1550, 1557–60 (D.C.D.1987) (§ 1464(d)(6)(A) requires post-deprivation hearing at which Bank Board has burden to come forward with evidence sufficient to support a finding of a violation); *Collie v. FHLBB*, 642 F.Supp. 1147, 1149–52 (N.D.Ill.1986) (re-jects APA's arbitrary and capricious standard, but nonetheless holds that if the association had a "meaningful opportunity" to make a case and if there was a "reasonable factual basis" for Board action, no court trial is required); *Telegraph Savings and Loan Association v. FSLIC*, 564 F.Supp. 862, 869–70 (N.D.Ill.1981) (full adversarial hearing "on the merits" required as to whether Board had statutory authority to appoint receiver), *aff'd on other grounds*, 703 F.2d 1019 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 681 (1983); *Fidelity Savings and Loan Association v. FHLBB*, 540 F.Supp. 1374, 1377 (N.D. Cal. 1982) ("If it means nothing more, the term 'on the merits' reveals that a proceeding under this statute is more in the nature of a *de novo* review than an appellate review."), *rev'd on other grounds*, 689 F.2d 803 (9th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). These decisions, while not controlling, are not in conflict with our reading of § 1464(d)(6)(A). Only the *Collie* and *Telegraph* courts actually applied a standard of review and reached a decision on the merits, and the *Collie* court granted summary judgment after finding that the FHLBB afforded the aggrieved association a meaningful hearing and had a reasonable factual basis for its action. 642 F.Supp. at 1154. No federal appellate court has ruled that a *de novo* hearing is required. Indeed, the only other court of appeals to address the issue has squarely held that the Bank Board's decision is to be reviewed on the basis of the administrative record in accordance with the APA standard. *See Guaranty Savings*, 794 F.2d at 1342. *Accord San Marino Savings and Loan Association v. FHLBB*, 605 F.Supp. 502, 508 (C.D.Cal.1984) (appropriate standard of review under § 1464(d)(6)(A) is arbitrary and capricious test); *Washington Federal Savings and Loan Association v. FHLBB*, 526 F.Supp. 343, 350, 353–54 (N.D. Ohio 1981) (scope of judicial review coincides with § 706(2)(A) of the APA; court considers whether decision to appoint receiver was based on relevant factors and whether there has been clear error of judgment).

Plaintiffs contend that they are entitled to a *de novo* hearing under § 706(2)(F) of the APA. This subsection reads as follows:

The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

\* \* \* \* \* \*

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2)(F). Section 706(2)(F) has been interpreted by the Supreme Court as authorizing *de novo* review "when the action is adjudicatory in nature and the agency fact finding procedures are inadequate" and "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (Secretary of Transportation's decision under the National Environmental Protection Act to approve construction of a highway through a park was non-adjudicatory in nature and not subject to § 706(2)(F)). *See also Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973) (fact-finding procedures used by Comptroller of the Currency were not deficient); *Porter v. Califano*, 592 F.2d 770 (5th Cir.1979) (§ 706(2)(F) authorizes a district court to conduct *de novo* review of agency action suspending employee for criticizing supervisors where agency factfinding procedures were inadequate).

▮ Plaintiffs urge that the Bank Board's factfinding procedures were inadequate and that *de novo* review is thus appropriate.[5] We do not agree. The Supreme Court has limited *de novo* review of agency actions under § 706(2)(F) to situations "where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Camp*, 411 U.S. at 142, 93 S.Ct. at 1244 (citing *Overton Park*, 401 U.S. at

415, 91 S.Ct. at 823). Section 706(2)(F) does not embrace the situation at hand. Congress did not require that the Bank Board hold an adjudicatory hearing to determine whether a statutory ground for appointment of a receiver existed. Instead, Congress has entrusted the Bank Board with a broad regulatory mandate, and the Bank Board has responded with a thorough, extensive regulatory scheme as Congress intended. The permission granted to the association in § 1464(d)(6)(A) to bring an action in a district court is limited to seeking an order to remove the receiver. Since *Alliance* commits us to view the action as of the time the receiver was appointed, the merits of that judicial review are properly limited to the administrative record.

The Bank Board's appointment of a receiver is similar to the Comptroller of the Currency's denial of an application for a new bank in *Camp*. Both agencies are granted broad *ex parte* authority to make the pertinent determinations. In *Camp*, the Comptroller was statutorily authorized to deny the plaintiffs' application for authorization to organize a new bank without a formal hearing. Review of this agency action was to be made in the district court under the arbitrary and capricious test and not in a *de novo* hearing. The Supreme Court stated "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.*, 411 U.S. at 142, 93 S.Ct. at 1244. On the authority of *Camp, Alliance,* and *Guaranty Savings*, we reject plaintiffs' claim that § 706(2)(F) entitles them to a *de novo* hearing in the district court.

In sum, a practical analysis of § 1464(d)(6)(A) establishes that Congress did not intend for the district court to review the Bank Board's decision *de novo*, but rather that the decision be reviewed on the basis of the administrative record in accordance with the APA's "arbitrary and capricious" standard of review. Under § 706(2)(A), plaintiffs have the burden to

---

5. The Eighth Circuit recognized the possibility of this argument in *Guaranty Savings*, 794 F.2d at 1342 n. 5. Because the association there did not assert that either exception applied to its case, the court declined to address the issue. *Id.*

show that the Bank Board's decision to appoint a receiver was arbitrary and capricious. *Guaranty Savings*, 794 F.2d at 1342. The Bank Board's decision is entitled to a "presumption of regularity." *Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823. A court's review of the Bank Board's decision is "confined to the administrative record." *Carlo Bianchi*, 373 U.S. at 715, 83 S.Ct. at 1413; *Camp*, 411 U.S. at 142, 93 S.Ct. at 1244 (1973). The arbitrary and capricious standard of review requires a reviewing court to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823–24.

### B. *Review of the Bank Board's Decision*

■ We agree with the district court that the administrative record in this case amply supports the Bank Board's conclusion that Western was insolvent, had suffered a substantial dissipation of assets as a result of violations of rules or regulations and unsafe or unsound practices, and was in an unsafe or unsound condition to transact business.

The determination that Western was insolvent to the extent of $56 million was based on the relation of reported net worth to appraised loan losses. These losses were calculated in seventeen independent appraisals conducted in accordance with 12 C.F.R. §§ 563.17–1 and 571.7. Plaintiffs submitted an audit by Arthur Young & Company which showed Western to have a net worth in excess of $48 million as of December 31, 1985. The Arthur Young audit, however, reported Western's financial condition more than eight months before the Bank Board appointed the FSLIC as receiver. This audit report did not reflect the fact that Western reported an increase in problem loans of 30 percent in the first six months of 1986. Nor did this audit report consider the results of supervisory appraisals by the Bank Board reflect-

ing 1986 activity. Finally, the Arthur Young audit does not purport to be based on any appraisals of the value of collateral supporting Western's loans other than the values assigned by Western in its own previously issued financial statements.

The Arthur Young audit report was considered by the Bank Board. It is included in the administrative record which was before the district court. It presents an independent auditor's opinion about the financial condition of Western, but as of an earlier time and based on Western's own reports. The district court could determine that the Bank Board did not act arbitrarily or capriciously by giving greater weight to the results of independent appraisals and more current examiners' findings. The determination of insolvency is amply supported in the record.

The Bank Board's determination that Western had suffered a substantial dissipation of assets due to violations of rules or regulations and unsafe or unsound practices is also supported by the administrative record. Western repeatedly made loans without proper appraisals of collateral, which violated 12 C.F.R. § 563.17–1(c)(1)(iii); made loans in excess of the limitations on loans to one borrower in violation of 12 C.F.R. § 563.9–3(b)-(2)(i); and committed violations of the July 1984 cease and desist order. The Bank Board also found that Western concentrated its loan portfolio in high-risk acquisition, development and construction loans, and that it funded these loans through volatile brokered and jumbo deposits. Western improperly classified many investments in violation of 12 C.F.R. §§ 563.17–1(c), 563.23–3, and 563c.12(b); failed to collect sufficient financial information on the ability of borrowers and guarantors to repay loans in violation of 12 C.F.R. § 563.17–1(c)(1)(iv); exceeded limits on liability growth contrary to 12 C.F.R. § 563.13–1(a)(1); conducted improper financial option transactions in violation of 12 C.F.R. § 563.7–5; and routinely undertook transactions with affiliated entities which were prohibited by 12 C.F.R. §§ 563.43 and 571.7.

The record is not limited to a single episode or period of improper performance. Western continued its imprudent practice over a four-year span despite numerous regulatory warnings, supervisory actions, and the cease and desist order. The same evidence supporting the determination that Western had suffered a substantial dissipation of assets, resulting in a negative net worth in excess of $56 million, also showed that Western was in an unsafe and unsound condition to transact business.

All three determinations find ample support in the administrative record. Despite Western's contentions that in some instances the criticisms in the examinations were inaccurate, abundant other information in the record that was before the Bank Board clearly supports the district court's conclusion that no genuine fact dispute existed over whether the Bank Board acted arbitrarily or capriciously in deciding to appoint a receiver for Western.

## C. *Due Process*

Plaintiffs contend the APA's arbitrary and capricious standard of review which was applied in the district court denied them due process of law. They contend that the Constitution requires a post-deprivation evidentiary and adjudicatory hearing since they did not receive notice or any opportunity to be heard before the Bank Board seized all of Western's assets.

■ The short answer is that Congress deliberately entrusted the Bank Board and the FSLIC with broad authority to regulate insured institutions in order to protect the FSLIC from the risks of business failures. This is made plain by the fact that there is no requirement in § 1464(d)(6)(A) for an aggrieved association to be afforded a formal opportunity to be heard before the Bank Board. The Supreme Court has held that there is no constitutional requirement that an association be given an adjudicatory hearing prior to the Bank Board's appointment of a receiver. *Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). Under this authority, Congress expressly empowered the Bank Board to appoint a receiver "ex parte and

without notice." In many instances a pre-seizure hearing and notice of planned action could thwart the Bank Board's need to act decisively to secure remaining assets.

Plaintiffs contend that the Constitution still requires a meaningful hearing preferably before a taking, but, if not then, at least after the seizure of the property. If Congress did not provide for a meaningful hearing in § 1464(d)(6)(A), plaintiffs continue, then the statute itself infringes on their constitutional due process rights. Plaintiffs rely for the most part on language from a number of Supreme Court decisions which they say establish that some kind of hearing is required before a final deprivation of property. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) ("the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Plaintiffs claim a constitutional entitlement to either a pre- or post-deprivation adjudicatory hearing to contest the Bank Board's taking of Western's assets, which would include notice of allegations and substance of supporting evidence and an opportunity to submit a written response, meet with examiners, and present statements from rebuttal witnesses. *See Brock v. Roadway Express, Inc.*, —— U.S. ——, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). Plaintiffs say this is necessary to minimize the chance of a mistaken deprivation of property.

Procedural due process is a flexible concept and "calls for such procedural protections as the situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). What due process may require "in dealing

with one set of interests which it protects may not be required in dealing with another set of interests." *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974).

◼ Normally, courts examine the adequacy of pre-deprivation procedures afforded an aggrieved party in light of the post-deprivation procedures that are available. *See, e.g., Brock,* 107 S.Ct. 1740; *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). The exceptionally strong government interest in administering FSLIC insurance and the unique statutory position occupied by the Bank Board which requires no pre-deprivation hearing combine to present us with the reverse of the situation found in most procedural due process cases.

Although plaintiffs concede the Bank Board's authority to appoint a receiver *ex parte* and without notice, they assert that the absence of pre-deprivation process heightens the need for post-deprivation procedures in this case. We agree. We must examine the constitutional challenge to the statutory scheme on its face and with regard to the particular procedures employed in this case by balancing the strong government interests in imposing an *ex parte* receivership, the nature of the private interests of those affected by the government action, the risk of erroneous deprivations through the challenged Bank Board's procedures, and the nature and value of the pre-deprivation proceedings. *Cf. Brock,* 107 S.Ct. at 1747 (Marshall, J., for plurality) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)); *id.,* 107 S.Ct. at 1752 (White, J., concurring in part and dissenting in part) (citing *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495).

The government interest in this case is obvious. Savings and loan associations derive the principal part of their fiscal strength from FSLIC insurance. Without this insurance, associations would be unable to secure the guarantee of the government for individual deposits. With the deposits this security attracts, institutions make investments, acquire property, and extend loans. The risk of failure with respect to these transactions falls most heavily upon the FSLIC as insurer. Congress thus granted the Bank Board and the FSLIC the strongest powers constitutionally possible in order to preserve depositor confidence in the savings institutions of this country and to minimize loss and depletion of FSLIC insurance funds.

Woods' and Western's private interests are obviously subordinate to those of the government. When Woods acquired Western, he was aware of the extensive regulatory system and the possibility of continuous, in-depth supervision by Bank Board examiners. He had to know this supervision would be acute in the case of an institution which increased its assets from approximately $34 million to almost $2 billion in a period of just over four years. While owners of a FSLIC-insured savings and loan association clearly have the constitutional right to be free from unlawful deprivations of their property by the national government, these private interests do not stand on the same footing as the interests of the property owner in *Fuentes,* the school district employees in *Loudermill,* the federal government employee in *Arnett,* or the interstate trucking company in *Roadway Express.* We are dealing here with entirely different interests. While plaintiffs' interests cannot be destroyed by arbitrary or capricious actions, the process that is due is to be assayed by considerations which account for all interests in their context.

◼ The method provided—a court review of agency action under the arbitrary or capricious standard—is adequate to assure against the risk of mistaken deprivations. If the record before the Bank Board is properly compiled and demonstrates it properly followed its Congressional mandate and its own regulations, and gave fair and reasoned consideration to all relevant factors before determining that one or more of the statutory grounds for appointment of a receiver existed, its decision will survive review in the district court. That congressionally provided standard of re-

view is all the process an FSLIC-insured savings and loan association and its owners are constitutionally due in this case.

Plaintiffs urge that the Supreme Court's *Fuentes* decision directly controls the facts of this case. Plaintiffs quote the following language:

> The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that 'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.... [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'

*Fuentes,* 407 U.S. at 81, 92 S.Ct. at 1994 (quoting *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 170–172, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). The Supreme Court in *Fuentes* struck down two states' prejudgment replevin statutes as a deprivation of property without due process insofar as they deprived an impecunious owner of the opportunity to be heard prior to the taking of his property. *Fuentes* is distinguishable on a number of grounds. First, *Fuentes* directly involved the necessity of pre-deprivation process; here, it is conceded that a formal pre-deprivation hearing is not necessary. Defendants' challenge is directed only to post-deprivation procedures. Second, the interests of an FSLIC-insured savings and loan association and its owners are not comparable to the interests of Mrs. Fuentes in retaining her gas stove against the interests of the creditor who, under state law, merely had to fill out a form to take the property without a pre-seizure hearing.

■ Finally, invocation of the words of Justice Frankfurter which addressed a secret, one-sided determination where plaintiff was given no notice and no opportunity to respond is inappropriate here. Plaintiffs claim that the Bank Board's factfinding procedures were "wholly inadequate," that Western was denied the opportunity to participate in the process of creating the administrative record, that the record was unilaterally and secretly compiled, and that it does not contain their contribution to the examinations or their responses to specific charges. Plaintiffs attempt to create the impression of an unfair, high-handed takeover that Western did not know about. This simply was not the case. To the extent that due process requires a meaningful opportunity to be heard and meaningful notice in this case, plaintiffs received just that throughout the four-year period of continuous, open supervision by Bank Board examiners. The administrative record shows thorough, persistent notice to and opportunity for criticism and input on the part of Western. Nothing in the administrative record and no affidavit before the district court in response to the motion for summary judgment indicates that any factual matter, defense or response which Western offered or presented was refused by the Bank Board or barred from the record.

Plaintiffs cannot complain that Western was seized by surprise or that they were deprived of their property without notice. Not only was there a formal cease and desist proceeding, but also these same plaintiffs filed the initial action in this case in June 1986, some three months before the Bank Board appointed the receiver. Plaintiffs clearly were aware of the gravity of the situation at that time. In addition, we cannot ignore the fact that the investigation of Western began almost immediately after Woods acquired the institution. Woods rapidly increased Western's assets through high-risk ventures and thus provoked the painstakingly close scrutiny. The Bank Board's action was not an overnight or surreptitious takeover, but the ultimate result of a culmination of provocations resulting from Western's continuing

unwillingness to conform to required practices. The Bank Board's action was preceded by almost constant notices that Western's actions were under scrutiny and that Western's best possible explanations or justifications were required.

Plaintiffs had numerous informal, personal meetings with examiners and supervisors over the four-year period which afforded them opportunities to provide information or explanations of Western's accounting practices, its questionable loans, or its financial records. The Bank Board reviewed Western's loan file, its own appraisals of its property and Western's monthly, quarterly and annual financial statements. Western received copies of the Bank Board's supervisory appraisals even before the receiver was appointed. In connection with the July 1984 cease and desist proceedings, plaintiffs were afforded the opportunity to have a formal administrative hearing, but waived it.

Western also received formal notice of the Bank Board's determination after the receivership appointment as contemplated by Congress. At that time, Western received notice of the substance of the pertinent evidence supporting each determination as well as the entire administrative record containing all materials on which the Bank Board relied. Western had the opportunity to rebut the Bank Board's evidence and conclusions in district court. Western availed itself of this opportunity by submitting a multi-volume exhibit and affidavits in opposition to the Bank Board's position. The record compiled in the district court clearly establishes that Western was not precluded from meaningful participation in the administrative decision-making process.

The record contains Western's own audit conducted by Arthur Young. It includes Western's response to examiners' findings a year and one-half before the receivership appointment, which essentially took the wholly refuted position that Western's practices conformed to the Bank Board's rules and regulations as well as the cease and desist order. It contains Western's contentions of solvency, its position that its

loans and other transactions were legitimate and prudent, and its view that the $10 million carried value on its books for another insolvent savings association was appropriate.

Plaintiffs' general assertions that Western was denied participation in the administrative proceedings and that relevant materials, including its responses to some of the specific charges, were not included in the administrative record do not establish that the Bank Board intentionally excluded relevant evidence which would have supported plaintiffs' position. The record in the district court manifests the contrary. Western's affidavits raised the conflict as to solvency which the Arthur Young auditor's affidavit created. Criticism of appraisal work regarding a significant tract of land which secured one large loan was the subject of another counter affidavit. The remainder of the record before the district court, which is only generally attacked in the briefs of Western, firmly supports the Bank Board's findings and is more than ample to persuade us that the district court correctly found the Bank Board's action was not arbitrary or capricious.

D. *The Propriety of Summary Judgment*

Plaintiffs had the opportunity in district court to rebut the Bank Board's factual assertions or show that a genuine issue of material fact existed which indicated the decision to appoint a receiver was arbitrary and capricious. The arguments raised and the evidence offered by plaintiffs failed to do this. Their challenges did not raise a factual issue as to whether any one of the Bank Board's three key determinations was unsupported in the administrative record.

Plaintiffs, for example, questioned the objectivity and qualifications of some of the appraisers and the methodology employed in conducting a number of the appraisals. In a responsive brief to the motion for summary judgment, Western's counsel asserted that virtually all of Western's formal management responses and other significant correspondence is absent from the record. However, no proper summary

judgment affidavit brought to the attention of the district court what responses or letters were omitted. Plaintiffs never did challenge the classification of or even attempt to explain many problem loans. The district court expressly noted that plaintiffs left unchallenged many transactions and practices disclosed by the record which were sufficient in themselves to support the Bank Board's key determinations. The district court properly declined to allow a battle of appraisers. The issues were correctly limited to an examination of what was or should have been before the Bank Board when it acted.

Plaintiffs complain that they were denied adequate discovery before the district court granted summary judgment. They assert that genuine fact issues existed as to insolvency, substantial dissipation of assets, Western's unsafe and unsound condition, and the completeness of the administrative record and that the need for discovery was made known to the district court by affidavit.

Rule 56(e) of the Federal Rules of Civil Procedure provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Rule 56(f) further provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Pursuant to Rule 56, plaintiffs must excuse their inability to raise genuine issues of material fact by stating specific reasons. Here, the Rule 56(f) affidavit filed by an attorney for plaintiffs conclusorily stated:

> Plaintiffs are currently unable to present by affidavit or otherwise all facts essential to justify their opposition to defendants' motion for summary judgment, because all facts necessary to determine the lawfulness of defendants' *ex parte* actions are within the exclusive control of defendants and no discovery has been taken by plaintiffs in this cause although various discovery requests have been served.

The very nature of the material "facts" —favorable matters known to Western and disclosed by its agents to the defendants— dispute the contention that they could have been in the exclusive control of the Bank Board. The district court's review was required to focus on the administrative record, which was part of the court record. Plaintiffs were provided a copy. The district court did not rely on any facts outside that record. If materials known to plaintiffs had been omitted from the record, discovery was not needed to develop them. The plaintiffs were required to do more than state that discovery might reveal something of which they were currently unaware.

We also note that, subsequent to the filing of this Rule 56(f) affidavit, plaintiffs filed a multi-volume exhibit in opposition to the Bank Board's summary judgment motion. The district court correctly found that this limited summary judgment proof failed to raise a genuine issue of material fact that the Bank Board's findings "as revealed by the administrative record" were arbitrary or capricious. *See Alliance*, 782 F.2d at 495–96.

Rule 56 does not permit a party to avoid confronting his opponent's summary judg-

ment proof by seeking discovery on factual matters that would not affect the legal basis for summary judgment. Section 1464(d)(6)(A) provides the procedure for appointing a receiver and reviewing that determination. Issues of material fact are narrowed by the statute's limitations of the proceedings. The questions before the district court were whether one or more of the statutory grounds for appointment of the receiver were established in the administrative record and whether the Bank Board acted arbitrarily or capriciously in making its decision. In their brief in district court, plaintiffs failed to identify any genuine issue of material fact which required a postponement for discovery. The court properly stayed discovery and granted the Bank Board's motion for summary judgment.

### III.

The district court's grant of summary judgment dismissing plaintiffs' action to remove the FSLIC as receiver for Western and its denial of interim injunctive relief are

AFFIRMED.