**GIBRALTAR SAVINGS, Plaintiff,**

v.

**Timothy RYAN, Director, Office of Thrift Supervision, et al., Defendants.**

Civ. A. No. 89–3207(OG).

United States District Court, District of Columbia.

July 26, 1991.

Christina Snyder, Los Angeles, Cal., for plaintiff.

Steven Dimmick, Washington, D.C., for defendant Office of Thrift Supervision.

Alicia Serfaty, Washington, D.C., for defendant Resolution Trust Corp.

## MEMORANDUM

GASCH, Senior District Judge.

Gibraltar Savings ("Gibraltar") is a state-chartered, federally-insured savings association that is headquartered in Beverly Hills, California. Gibraltar challenges an order of the Director of the Office of Thrift Supervision ("OTS") that appointed a receiver for the institution. The two named defendants, OTS and the Resolution Trust Corporation ("RTC"), have filed motions for summary judgment. The motions are ripe for decision by the Court.

### I. BACKGROUND

On March 30, 1989, the Federal Home Loan Bank Board ("Bank Board") appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") conservator of Gibraltar. The reasons given by the Bank Board for the appointment of a conservator were that the institution "has incurred substantial dissipation of its assets and earnings due to violations of law, rules, regulations and unsound practices and is in an unsafe and unsound condition to transact business." Resolution No. 89–1090 (Office of Thrift Supervision's Motion for Summary Judgment ("OTS Memorandum"), Exhibit A).

On August 9, 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Pub.L. No. 101–73, 101 Stat. 292. FIRREA abolished the Bank Board and FSLIC. RTC succeeded FSLIC as conservator for Gibraltar and OTS succeeded the Bank Board as the regulator of federally-insured savings associations. In addition, FIRREA provides the Director of OTS with the authority to appoint conservators and receivers for savings associations upon the finding of certain enumerated unsafe or unsound banking conditions, such as insolvency or dissipation of assets. See 12 U.S.C. §§ 1464(d)(2)(A) (listing the appointment grounds for a federal savings association), 1464(d)(2)(C) (listing the appointment grounds for a state savings association).

On October 30, 1989, the Director exercised his appointment authority and replaced the RTC as conservator for Gibraltar with the RTC as receiver for Gibraltar. The Director found one ground for appointing the receiver for Gibraltar. The ground was that Gibraltar was insolvent in that its

assets were less than its obligations to its creditors. *See* 12 U.S.C. § 1464(d)(2)(C)(i). On November 28, 1989, Gibraltar filed this action challenging the appointment of a receiver.

## II.  DISCUSSION

### A.  *Judicial Review*

■ The first issue presented by this case is the nature of the Court's review. Gibraltar argues that the Court's review of the appointment of a receiver is *de novo* and that the Court's inquiry is not limited to the administrative record. OTS, on the other hand, argues that the Court's standard of review is arbitrary or capricious and that the Court's inquiry is limited to the administrative record. For the reasons that follow, the Court agrees with OTS that the standard of review is arbitrary or capricious and that the Court's inquiry is limited to the administrative record.

### 1.  Standard of Review

Judicial review of the Director's decision to appoint a conservator or receiver is provided for in 12 U.S.C. § 1464(d)(2)(E). Although the provision does not provide any guidance as to the standard of review that the Court should apply, the three circuits that have addressed the question have applied the Administrative Procedure Act's ("APA") arbitrary or capricious standard. *See Franklin Savings Association v. Office of Thrift Supervision,* 934 F.2d 1127 (10th Cir.1991); *Woods v. Federal Home Loan Bank Board,* 826 F.2d 1400 (5th Cir. 1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988); *Guaranty S & L Ass'n v. Federal Home Loan Bank Board,* 794 F.2d 1339 (8th Cir.1986).

Despite this contrary precedent, Gibraltar raises two arguments for *de novo* review. First, Gibraltar argues that when a statute specifically allows an aggrieved party to file an action to review an agency's decision, the standard of review is *de novo* because the standards set forth in the APA are not applicable. Second, Gibraltar asserts that due process requires *de novo* review.

■ The Court finds neither of these arguments persuasive. The fact that the statute is silent as to the type of review does not indicate that the review should be *de novo*. In fact, the Supreme Court has indicated that where the statute is silent, courts should not engage in a *de novo* review. *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963). When the statute is silent, a reviewing court should look to the APA for the appropriate standard. *Franklin Savings,* 934 F.2d at 1141; *Guaranty Savings & Loan,* 794 F.2d at 1342. In this case, the standard is arbitrary or capricious. *Franklin Savings,* 934 F.2d at 1141; *Woods,* 826 F.2d at 1408; *Guaranty Savings & Loan,* 794 F.2d at 1342.

■ Contrary to Gibraltar's argument, the due process clause does not alter the above result. After analyzing the interests at stake in the appointment of a receiver, the Fifth Circuit, in *Woods,* found that

> court review of agency action under the arbitrary or capricious standard—is adequate to assure against the risk of mistaken deprivations. If the record before the Bank Board is properly compiled and demonstrates it properly followed its Congressional mandate and its own regulations, and gave fair and reasoned consideration to all relevant factors before determining that one or more of the statutory grounds for appointment of a receiver existed, its decision will survive review in the district court. That congressionally provided standard of review is all the process an FSLIC-insured savings and loan association and its owners are constitutionally due in this case.

*Woods,* 826 F.2d at 1411–12. This Court agrees with reasoning in *Woods* and finds that due process is satisfied if the Director's decision to appoint a receiver considered all the relevant factors in determining whether the statutory grounds existed and the decision was not otherwise arbitrary or capricious.

### 2.  Scope of Review

In addition to arguing that the standard of review is *de novo*, Gibraltar argues that

the scope of review is not limited to the administrative record. This argument finds support in two recent United States District Court for District of Columbia decisions, *Haralson v. Federal Home Loan Bank Board,* 721 F.Supp. 1344 (D.D.C.1989) and *Lincoln Savings & Loan Association v. Wall,* 743 F.Supp. 901 (D.D.C.1990). In both of these cases, the district court allowed evidence to be developed beyond what was found in the administrative record. These decisions, however, are contrary to three Court of Appeals' decisions, which have found that review is limited to the administrative record. *Franklin Savings,* 934 F.2d at 1140; *Woods,* 826 F.2d at 1408–09; *Guaranty Savings,* 794 F.2d at 1342.

■ This Court is persuaded by the reasoning in *Franklin Savings, Woods,* and *Guaranty Savings* that the scope of review must be limited to the administrative record that was before the Director at the time the decision was made to appoint a receiver. The general rule is that when the statute is silent on the procedure for review, the review must be confined to the administrative record. *See United States v. Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963); *Franklin Savings,* 934 F.2d at 1136; *Woods,* 826 F.2d at 1406; *Guaranty Savings,* 794 F.2d at 1342. *Haralson* and *Lincoln Savings* avoid this general rule by concluding that the judicial review provision, which provided that "the court shall upon the merits dismiss such action or ... remove such ... receiver," authorizes the court to look beyond the administrative record. *Lincoln Savings,* 743 F.Supp. at 904 n. 3; *Haralson,* 721 F.Supp. at 1352–53. In the Court's view, this argument was properly considered and rejected by *Franklin Savings, Woods,* and *Guaranty Savings. Franklin Savings,* 934 F.2d at 1137; *Woods,* 826 F.2d at 1406; *Guaranty Savings,* 794 F.2d at 1342. As the court stated in *Guaranty Savings,* "the 'upon the merits' language ... merely means that the district court's decision to either dismiss the action or remove the appointed receiver should be based upon the merits of

the action (i.e., whether statutory grounds for a receiver exist) rather than on procedural or policy oriented grounds." 794 F.2d at 1342.

Gibraltar also raises the additional argument that review should not be limited to the administrative record because the Director's fact-finding was inadequate. In particular, Gibraltar contends that the fact-finding was inadequate because the appointment of a receiver was made *ex parte* and without notice to Gibraltar and because Gibraltar was not provided an opportunity to present evidence or make any defense.

■ Gibraltar is correct that a Court is not limited to the administrative record if the fact-finding procedures are inadequate. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 420, 91 S.Ct. 814, 823, 825, 28 L.Ed.2d 136 (1971). In this case, however, the Court is not persuaded that the Director's fact-finding procedures were inadequate. Congress provided the Director with extensive authority to regulate federal savings associations. 12 U.S.C. § 1464(a). As part of that authority, the Director is empowered to appoint a receiver *ex parte* and without notice if one or more of the statutory grounds for appointment exists. *Id.* § 1464(d)(2). Thus, as long as the Director fairly considers all the relevant evidence to determine whether a statutory ground exists for appointing a receiver, the Court has no basis to look beyond the administrative record. In this case, the Court finds no evidence that would support a finding that the Director did not fairly consider all the relevant evidence in appointing a receiver.

### B. *Gibraltar's Claims for Relief*

Gibraltar's complaint sets forth the following six claims for relief: (1) that none of the statutory grounds for appointment of a receiver existed at the time the RTC was appointed receiver; (2) that the appointment of a receiver constituted a taking without just compensation; (3) that to the extent the statute authorizes a taking without just compensation, it violates the Fifth Amendment; (4) that to the extent the statute authorizes the Director to de-

prive Gibraltar of its property without the opportunity of a hearing, it violates the Fifth Amendment; (5) that Gibraltar was not insolvent prior to the date of the appointment of a receiver; and (6) that if Gibraltar was insolvent on the date of the appointment of a receiver, the insolvency was the result of the actions of the conservator.

In response to both defendants' argument that this Court lacks jurisdiction to hear Gibraltar's "taking" claims, Gibraltar has agreed to have the Court dismiss, without prejudice, the second and third claims for relief. In addition, Gibraltar has also agreed to dismiss, without prejudice, all claims against defendant RTC. Consequently, the Court need only address Gibraltar's first, fourth, fifth, and sixth claims for relief against the OTS.

Upon reviewing the administrative record, the Court finds, for the reasons discussed below, that the first, fourth, fifth, and sixth claims for relief lack merit. The Court, therefore, grants OTS's motion for summary judgment.

### 1. Statutory Ground for Appointing a Receiver

Gibraltar's first and fifth claims address the same argument, which is whether ground(s) existed for the appointment of a receiver. The Director's basis for appointing a receiver for Gibraltar was that the institution was insolvent. 12 U.S.C. § 1464(d)(2)(C)(i). According to the administrative record, Gibraltar, on August 31, 1989, had a negative regulatory capital of approximately $35 million. OTS Memorandum, Exhibit A, Administrative Record, at 1564 ("Admin. Rec.") The administrative record further reveals that the capital position resulted from $229 million in losses from the sale of mortgage backed securities ("MBS") and $131 million in operating

losses. *Id.* at 1564, 1619, 1663. Thus, defendants contend that the administrative record supported the finding that Gibraltar was insolvent.[1]

In response, Gibraltar makes both a procedural argument and a substantive argument. First, Gibraltar argues that it can not properly formulate a response to the administrative record because it has had no opportunity to engage in discovery in order to challenge the findings in the administrative record. Second, as a substantive matter, Gibraltar does not seriously contest the fact that Gibraltar was insolvent at the time the receiver was appointed. Instead, Gibraltar argues that it was not insolvent when the conservator was appointed and only became insolvent during the time the conservator was in place. Accordingly, Gibraltar argues that the insolvency was the result of the actions of the conservator.

■ The Court has already addressed Gibraltar's procedural argument. Review of the decision to appoint a receiver is confined to the administrative record. If the administrative record cannot support the Director's decision, then the Court must remove the receiver. Gibraltar cannot defeat summary judgment by arguing that it did not have the opportunity to supplement the administrative record.

It is also important to note that the administrative record consists to a large extent of Gibraltar's own documents. Based upon Gibraltar's own documents, the Director found that Gibraltar was insolvent. It is thus of little consequence that Gibraltar did not have a subsequent opportunity to submit evidence to supplement the administrative record.

■ Gibraltar's substantive argument also fails to defeat OTS's summary judgment motion. The statutory ground relied upon by the Director for appointing a receiver is that Gibraltar was insolvent. The

---

1. OTS also argues that if grounds existed for appointing a conservator, the appointment of a receiver does not require the Director to show the existence of any additional ground(s). This argument is based upon 12 U.S.C. § 1464(d)(2)(F), which provides that the "Director may, without any prior notice, hearing or other action, replace a conservator ... with a receiver." Thus, OTS argues that the appointment of a receiver was appropriate because grounds existed for the appointment of a conservator. The Court does not address this argument because the Court concludes that the administrative record supports the Director's finding that Gibraltar was insolvent at the time the receiver was appointed.

administrative record supports this finding and Gibraltar does not seriously challenge this finding.

The Court rejects Gibraltar's argument that there is a relevant factual question concerning whether the insolvency was caused by the conservator. At the time a conservator was appointed, Gibraltar had invested heavily in fixed-rate MBS. The administrative record shows that the market value of these securities had fallen substantially because of the rise in interest rates. Admin. Rec. at 302, 878. Because the conservator found that the interest rate risk of these securities could not be offset by a hedging strategy, the conservator sold the MBS securities for a loss of $229 million. *Id.* at 1564, 1619, 1633–36. Although this loss substantially contributed to Gibraltar's insolvency, the Court finds that the government can not be held responsible if its attempted remedial measures failed to prevent Gibraltar from becoming insolvent. As OTS points out in its brief, "[i]t would be most anomalous that if a remedial measure were not successful, the law prohibited further remedial efforts and required that the institution be returned to the original management without regard to the depositors and creditors." OTS Reply Memorandum, at 9. In this case, the administrative record supports the conclusion that Gibraltar's investment decisions were the cause of its financial problems. The Court finds that the conservator's failure to remedy Gibraltar's financial difficulties cannot be a basis for removing an otherwise properly appointed receiver.

### 2. Gibraltar's Due Process Claim

Gibraltar argues that the appointment of a receiver violated due process because there was no formal evidentiary hearing before or after the appointment. Due process, however, does not require a hearing before the appointment of a receiver, and after appointment, judicial review pursuant to 12 U.S.C. § 1464(d)(2)(E) satisfies due process.

In *Fahey v. Mallonee,* 332 U.S. 245, 253–54, 67 S.Ct. 1552, 1554–56, 91 L.Ed. 2030 (1947), the Supreme Court rejected plaintiffs' argument that the Constitution requires a pre-appointment hearing. In *Fahey,* the Supreme Court analyzed the precursor to the present statutory scheme. In rejecting the argument that the lack of a pre-appointment hearing violated due process, the Court stated the following:

It is complained that these regulations provide for hearing after the conservator takes possession instead of before. This is a drastic procedure. But the delicate nature of the institution and the impossibility of preserving credit during an investigation has made it an almost invariable custom to apply supervisory authority in this summary manner. It is a heavy responsibility to be exercised with disinterestedness and restraint, but in light of the history and customs of banking we cannot say it is unconstitutional.

*Id.* The Court finds that this statement applies equally to the present case.

In addition, as the Court has previously addressed, judicial review, under the arbitrary or capricious standard, that is provided for in 12 U.S.C. § 1464(d)(2)(E), satisfies the post-appointment due process requirement. *See supra,* at 1292–93. As long as the Director's decision to appoint a receiver considered all the relevant factors in determining whether the statutory grounds existed and the decision is not otherwise arbitrary or capricious, due process is satisfied.

### 3. Gibraltar's Estoppel Claim

■■■ This claim asserts that if grounds for a receiver existed, it was the conservator's fault. Accordingly, Gibraltar argues that the government should not be able to "benefit" from the condition it caused by using it to justify the appointment of a receiver. This argument is essentially a repeat of the argument Gibraltar makes with respect to whether statutory ground(s) existed for the appointment of a receiver. *See supra,* at 1294–95. This argument fares no better as an independent claim for relief.

■■■ The statute authorizes the appointment of a receiver when certain grounds exist. Thus, the issue in this case is wheth-

er or not the statutory grounds existed. As the Court stated previously, the conservator's failure to remedy Gibraltar's financial difficulties cannot be a basis for removing an otherwise properly appointed receiver.

Furthermore, even if it was proper to apply the doctrine of estoppel to this case, our Court of Appeals has emphasized that the doctrine of estoppel should be applied to the government only in "compelling" circumstances. *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C.Cir. 1988). The Court finds that this case does not present any compelling circumstances for estopping the government from acting.

### III. CONCLUSION

The Director is authorized to appoint a receiver if the institution is insolvent. In this case, the administrative record fully supports the Director's decision that Gibraltar was insolvent at the time the Receiver was appointed. The Court, therefore, grants OTS's motion for summary judgment.