104 F.3d 351
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
IN RE: THE CONSERVATORSHIP OF CEDC FEDERAL CREDIT UNION
CEDC FEDERAL CREDIT UNION, Petitioner-Appellant,
v.
NATIONAL CREDIT UNION ADMINISTRATION, Respondent-Appellee.
 No. 96-6064.
 United States Court of Appeals, Second Circuit.
 Sept. 26, 1996.
 
 Appearing for Appellant: Douglas J. Good, Ruskin, Moscou, Evans & Faltischek, Mineola, New York.
 Appearing for Appellee: Kevin P. Mulry, Assistant United States Attorney for the Eastern District of New York, Brooklyn, New York.
 Present: MESKILL, WINTER, and ALTIMARI, Circuit Judges.
 
 
 1
 This cause came to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 CEDC Federal Credit Union (the "Credit Union") appeals from a decision by Judge Hurley denying the Credit Union's application to enjoin the conservatorship that the National Credit Union Administration ("NCUA") imposed on it pursuant to § 206(h)(3) of the Federal Credit Union Act, 12 U.S.C. § 1786(h)(3).
 
 
 4
 The Credit Union argues that: (i) the conservatorship statute is an unconstitutional delegation of authority; (ii) the conservatorship statute violates the Fifth and Fourth Amendments; and (iii) the NCUA's action was arbitrary and capricious. The Credit Union's contentions are entirely without merit, and we affirm.
 
 
 5
 The Credit Union argues that the conservatorship statute is an unconstitutional delegation of authority because, without providing sufficient guidelines, it gives the NCUA the ability to invoke any of three available remedies for arguably the same problems. The NCUA can: (i) issue a notice to correct unsafe or unsound practices, 12 U.S.C. § 1786(b)(1); (ii) obtain an order to cease and desist from unsafe or unsound practices, § 1786(e)(1); or (iii) appoint itself as a conservator when it "is necessary to conserve the assets of any insured credit union or protect the Fund or the interests of the members," § 1786(h)(1). While the first two remedies require notice, the third remedy allows the NCUA to "ex-parte without notice, appoint itself as conservator and immediately take possession and control of the business and assets." § 1786(h)(1). The Credit Union claims that a due process violation exists where the NCUA has unfettered authority to choose between two remedies requiring notice and a remedy requiring no notice--the conservatorship. We disagree.
 
 
 6
 As long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power." J.W. Hampton Jr. & Co. v. United States, 276 U.S. 394, 409 (1928). Accordingly, Section 1786(h)(1) lists multiple situations where conservatorship is appropriate: when it is necessary to preserve the assets of any insured credit union; when an insured credit union agrees to a conservator; when the Attorney General notifies the NCUA that the credit union has been found guilty of certain criminal offenses; when there is a willful violation of a cease and desist order; and when there is concealment of books, papers, records or assets. § 1786(h)(1)(A)-(E). Moreover, that Congress left the NCUA with the discretion to choose between appointing a conservator or employing other remedies does not make the act unconstitutional. Choosing remedies is well within the role of an administrative body. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984).
 
 
 7
 Likewise, the Credit Union's claim that the statute's lack of a notice or hearing requirement for the imposition of a conservatorship violates its Fifth Amendment due process rights is also without merit. The Supreme Court has held that no predeprivation notice or hearing is necessary "in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993) (citation and internal quotation marks omitted). The government's interests in protecting bank depositors and the public from unsound practices justifies the appointment of a conservator without prior notice. See Fahey v. Mallonee, 332 U.S. 245, 253-54 (1947) (conservatorship of savings and loan). The government also has an interest in protecting the federal treasury from unnecessary insurance claims by depositors resulting from bank failures. The same rationale applies to the government's protection of credit unions.
 
 
 8
 The conservatorship statute safeguards the Credit Union's due process interests by providing postdeprivation review of the administrative decision by the district court. 12 U.S.C. § 1786(h)(3); see also First Nat'l Bank & Trust v. Dep't of the Treasury, 63 F.3d 894, 899 (9th Cir.1995), cert. denied, 116 S.Ct. 1875 (1996); Woods v. Federal Home Loan Bank Bd., 826 F.2d 1400, 1411 (5th Cir.1987), cert. denied, 485 U.S. 959 (1988).
 
 
 9
 The Credit Union's argument that the conservatorship violates the Fourth Amendment because it is a warrantless seizure is also meritless. In order to operate as a federally insured credit union, the Credit Union agreed to NCUA supervision--it gave the NCUA permission to examine its book and records. Now, when the NCUA has determined that the Credit Union's business practices have created the need for the guidance of a conservator, the Credit Union cannot claim that such supervision is a warrantless seizure. Cf. Franklin Sav. Ass'n v. Director, Office of Thrift Supervision, 934 F.2d 1127, 1141 (10th Cir.1991) ("The decision to appoint a conservator is not a judgment to divest the owner of his property. Rather, it is a judgment that the owner is unable or unwilling to properly manage or control the assets and it is an attempt to put the institution back into a safe and sound condition."), cert. denied, 503 U.S. 937 (1992).
 
 
 10
 Nor do we find that the district court erred in affirming the NCUA's decision to appoint a conservator. The Administrative Procedure Act, 5 U.S.C. § 706(2)(a), provides the appropriate standard of review for the court: the NCUA's decision should be set aside only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Usually, judicial review is restricted to the administrative record. See Franklin Sav. Ass'n, 934 F.2d at 1140; Woods, 826 F.2d at 1409; Gibraltar Sav. v. Ryan, 772 F.Supp. 1290, 1293 (D.D.C.1991). Ample evidence supports the district court's finding that the NCUA's decision was proper. The Credit Union grossly exceeded NCUA regulations by concentrating its loans to specific members; excessive loans were made to the Credit Union's sponsors without proper application, authorization, or indication of ability to repay; security listed for sponsor loans, often just an account number, was crossed-out and substituted and lacked indication as to what part of the security was pledged; recordkeeping problems continued for several years; and the Credit Union had shown a reluctance to provide NCUA officials with information.
 
 
 11
 The Credit Union urges us to find that the district court should have expanded the scope of review beyond the administrative record, because the NCUA allegedly acted in bad faith. While courts have recognized limited circumstances in which a reviewing court may go beyond the administrative record, see, e.g., Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971) (where administrative record fails to disclose factors considered by the agency), we do not find the bad faith allegations even remotely persuasive.